RENDERED: OCTOBER 4, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0741-MR

ANTHONY JOHNSON                                        APPELLANT

                  APPEAL FROM BREATHITT CIRCUIT COURT
v.             HONORABLE LISA HAYDEN WHISMAN, JUDGE
                ACTION NOS. 19-CR-00102-001 AND 20-CR-00004-001

COMMONWEALTH OF KENTUCKY                       APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND GOODWINE, JUDGES.

ACREE, JUDGE: Anthony Johnson appeals from the Breathitt Circuit Court's

June 9, 2023 order revoking his probation. He argues the participation of both the

prosecutor who moved to revoke his probation and the judge who did so mandates

the order be vacated because both formerly represented Johnson in the underlying

criminal cases. Second, he argues the order should be vacated because the circuit

judge used a form order and made no finding that Johnson is a significant risk to the community at large.  We affirm the circuit court.

## BACKGROUND

On August 14, 2019, Johnson stole two motorcycles.  A grand jury indicted him for theft by unlawful taking over $500 in Breathitt Circuit Court case No. 19-CR-00102.  On October 18, 2019, the police executed a search warrant and discovered drugs.  Johnson was indicted on charges of trafficking in marijuana over five pounds, possession of drug paraphernalia, and third-degree possession of a controlled substance.  This became Breathitt Circuit Court Case No. 20-CR-00004.  Both cases proceeded utilizing Zoom and other COVID-19 protocols.

For part of Case No. 19-CR-00102, Lisa Whisman was Johnson's appointed public advocate.  Docket sheets reflect Whisman made several court appearances on Johnson's behalf.  Amanda Hampton was Johnson's appointed public advocate in Case No. 20-CR-00004 and its corresponding district court case.  Hampton eventually assumed representation in both cases.

On October 2, 2020, Johnson pleaded guilty in both matters.  Hampton is listed as counsel on the final judgments for each case.  Johnson was sentenced to five years' incarceration.  His sentence was diverted for five years, and he was required to complete drug court as a condition of his diversion.

Johnson's diversion agreement was voided on December 16, 2020, for failure to comply with the conditions of drug court, but he was placed on probation on April 27, 2021. As a condition of his release, Johnson was required to report to a probation officer, to complete three phases of an inpatient rehabilitation program, to not use drugs or alcohol, and to not commit additional offenses.

The circuit court summoned Johnson to appear in court following allegations he had not reported to his probation officer as required. Johnson did not appear, and the circuit court issued a bench warrant.

On April 24, 2023, Trooper Jonathan Rouse noticed Johnson leaving a house which Trooper Rouse knew had a history of drug-related activity. Based on Johnson's outstanding warrant, Trooper Rouse attempted to initiate a traffic stop. However, Johnson sped away, and Trooper Rouse pursued him. Johnson drove dangerously in attempting to evade the trooper, passing other motorists in no passing zones and exceeding 100 miles per hour. Trooper Rouse's pursuit ended when Johnson finally stopped on the side of the road. Johnson was arrested. Drugs and drug paraphernalia were found during a search incident to the arrest. He was charged with fleeing or evading police, wanton endangerment, reckless driving, and several drug-related charges. The circuit court scheduled a probation revocation proceeding.

Between Johnson's 2020 guilty plea and his probation revocation hearing, Hampton began work in the Commonwealth Attorney's office and Whisman became circuit judge. At the revocation hearing, Hampton examined the Commonwealth's witnesses and moved to revoke Johnson's probation. Judge Whisman presided over the hearing and granted the motion. At no point did Johnson object to Hampton's or Judge Whisman's participation. Nor is there any indication anyone was alerted to the prior relationships.

The circuit court used a form order from the Administrative Office of the Courts to revoke Johnson's probation. The order indicated the circuit court revoked Johnson's probation for his commission of additional offenses while released on probation and that the court attempted multiple less restrictive alternatives to incarceration – including drug court and in-patient substance abuse treatment. The form order indicated the court determined Johnson is a risk to himself and/or others in the community at large, and that it had considered his criminal record, risk of future criminal behavior, his behavior during release, and the severity and nature of his probation violation.

Johnson appeals. He makes two arguments. He claims the order revoking his probation should be vacated because the prosecutor who moved for revocation and the judge who granted it were formerly attorneys with the Department of Public Advocacy who represented Johnson and, therefore, should

have disqualified themselves.  Next, he argues the circuit court abused its

discretion by revoking Johnson's probation because it provided no explanation

why Johnson was a risk to the community at large.  We discuss each in turn.

## ANALYSIS

1. *Insufficient basis for requiring circuit judge's recusal*

Johnson argues KRS[1] 26A.015 required Judge Whisman to recuse

from adjudicating his probation revocation proceeding.  We are unpersuaded.

We begin by noting nothing in the record indicates Whisman was

aware she previously represented Johnson during the COVID-19 era.  Nor does the

record indicate she met Johnson in person.[2]  For that matter, there is no indication

in the record that Johnson recognized either Whisman or Hampton as having

represented him before he brought this appeal.  Perhaps that is why Johnson failed

to alert the circuit judge to either prior relationship.  Our jurisprudence tells us that

matters.  We start with the opinion Johnson repeatedly cites, *Small v.*

*Commonwealth*, 617 S.W.2d 61 (Ky. App. 1981).  Johnson's reliance on *Small v.*

*Commonwealth* is misplaced and easily distinguished.

---

[1] Kentucky Revised Statutes.

[2] Johnson acknowledges, "Many of the hearings in the cases were held via phone or video due to restrictions created by the Covid-19 pandemic.  As a result, it is difficult to discern who is representing [Johnson] at certain hearings when reviewing the appellate record video." (Appellant's Br., p. 7.)  Because probation revocation is conducted as a continuation of the original case presenting the charges, these videos were always a part of the record, but nothing suggests they were considered much less viewed as part of the probation revocation proceeding.

Like Johnson, Small was before the court for a probation revocation hearing. *Id.* at 61. *Small v. Commonwealth* identifies no direct evidence that the circuit judge knew he was the prosecutor in the underlying case. *Id.* at 62. However, it would have been difficult to imagine the case number (which includes the year the charges were brought) failed to alert the judge that he was Commonwealth's Attorney when Small pleaded guilty. Consequently, this Court matter-of-factly "assume[d] that Judge Paxton would remember a case in which his office reduced a murder charge to one of reckless homicide, said case occurring some seventeen months previously." *Id.* at 63. The Court was also aware that Judge Paxton's jurisdiction while serving in both capacities was Caldwell County, a low population, rural western Kentucky county where such charges would not be commonplace.[3]

Focusing on Small's due process rights, we cited an opinion of the Supreme Court of the United States, *Gagnon v. Scarpelli*, *id.* at 62, for the proposition that probationers are entitled to the "minimum requirements of due process" which include "a 'neutral and detached' hearing body[.]" 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62, 36 L. Ed. 2d 656 (1973). The argument the Commonwealth presented to this Court was that Small waived those rights.

---

[3] This instant appeal originated in Breathitt County. Although the counties have comparable populations, the adjudication in *Small* did not occur during a pandemic. Furthermore, Johnson's charges were for, unfortunately, one of the most commonly prosecuted offenses, drug possession.

-6-

To use this Court's words, "[t]he Commonwealth contend[ed] that [Small's] failure to file a motion in the lower court that the judge disqualify himself constitutes waiver of the mandate of K.R.S. 26A.015(2)(a)." *Small*, 617 S.W.2d at 62. That "mandate," of course, serves to guarantee the due process right of an impartial tribunal. In *Small*, we refused to hold that a defendant's silence was enough to waive the right to an impartial tribunal as contrary to the very definition of a waiver. *Id.* Waiver "is a voluntary and intentional surrender or relinquishment of a known right," *Vinson v. Sorrell*, 136 S.W.3d 465, 469 (Ky. 2004), and we said, "that any waiver of such right may be made under proper circumstances, either in writing or on the record, but will not be presumed from silence." *Small*, 617 S.W.2d at 62.

Notably, *Small* was rendered in 1981, before the Supreme Court amended our rules of appellate procedure in 1984 to require a preservation statement at the beginning of an appellant's argument.[4] *In re: Order Amending*

---

[4] The 1980 and 1981 versions of the applicable rule merely required the appellant's brief to contain:

> (iv) An "ARGUMENT" conforming to the Statement of Points and Authorities with ample supportive references to the record and citations of authority pertinent to each issue of law.

Kentucky Rule of Civil Procedure (CR) 76.12(4)(d)(iv) (1980; 1981). *In re: Order Amending Rules* § 26 (Ky. Jun. 29, 1984), states the rule in its current form, as follows:

> 26. **CR 76.12(4)(c)(iv)**

> CR 76.12(4)(c)(iv) shall read:

*Rules* § 26 (Ky. Jun. 29, 1984) (found immediately preceding Vol. 664 of

Kentucky Decisions, Vols. 664-672 S.W.2d, pp. LIII–LIV).  Before then, an

appellee who wanted to make lack of preservation an issue had to raise it.  The

Commonwealth never made an issue of Small's failure to preserve the error.

Not surprisingly, a year after this Court rendered *Small* and before the

appellate rules changed, we interpreted *Small* as Johnson would have us read it

today – as having established a *per se* rule of disqualification.  Again making no

mention of error preservation, we said:

> In *Small v. Commonwealth* . . . , the Court of
> Appeals *strictly construed* the language of the statute[,
> KRS 26A.015] . . . .
>
> Here, [as in *Small*,] the appellant's failure to file a
> motion requesting the trial judge to disqualify himself did
> not constitute a waiver of his rights under the statute.  *See
> Small, supra* at p. 62. . . .  Consequently, although there is
> no hint in the record of any impropriety or bias on the part
> of [the circuit judge] . . . , the language of the statute
> required him to disqualify himself.

*Carter v. Commonwealth*, 641 S.W.2d 758, 760 (Ky. App. 1982) (emphasis added)

(hereinafter *Carter I*).

---

"(iv) An 'ARGUMENT' conforming to the Statement of Points and
Authorities, with ample supportive references to the record and citations of
authority pertinent to each issue of law *and which shall contain at the beginning of
the argument a statement with reference to the record chowing whether the issue
was properly preserved for review and, if so, in what manner*."

*In re: Order Amending Rules* § 26 (Ky. Jun. 29, 1984) (emphasis added) (found immediately
preceding Vol. 664 of Kentucky Decisions, Vols. 664-672 S.W.2d, pp. LIII-LIV).

-8-

By the time the issue made its way to the Kentucky Supreme Court, its amendment of CR 76.12(4)(c)(iv)[5] had put preservation of error for appellate review on the radar of every Kentucky appellate jurist. The Supreme Court also obviously recognized *Small* and *Carter I* created an incentive for defendants to remain silent if they recognized a judge as their prior counsel, keeping the information as a hold card to be played on appeal. That situation could not continue, and the Supreme Court corrected it by reversing this Court's opinion in *Carter I*, saying:

> In examining *Small, supra,* we note the following at p. 62:
>
>> . . . . It is our opinion that any waiver of such right may be made under proper circumstances, either in writing or on the record, but will not be presumed from silence.
>>
>> Although we continue to agree that waiver may be properly made as indicated therein, it is our opinion that *proper procedure would be to place the burden of disqualification on the defendant who may belatedly contend that he was prejudiced, rather than upon the judge.* We are cognizant that numerous trial and appellate judges and justices have roots which are embedded in the soil of the offices of Commonwealth Attorney and County Attorney. . . . To require the judge to recall all cases with which he was ever associated, many of which are of ancient vintage, simply defies logical reasoning. We therefore hold that, *in those cases in which the party relies upon the failure of any justice or judge of the Court of Justice to disqualify himself under the provisions of KRS*

---

[5] Now, Kentucky Rules of Appellate Procedure (RAP) 32(A)(4).

*26A.015(2)(b)*, **it must appear from the record**, *either by motion or otherwise, that he was apprised of his connection with the matter in controversy. This is in accord with every principle of justice relating to* **preservation of error**. Once brought to the attention of the judge or justice, compliance with KRS 26A.015(2)(b) is mandatory.

To hold otherwise would be to declare that this statute requires a *per se* rule that even unknowingly a judge may never preside in a case where there has been any previous contact with a defendant, even in totally unrelated criminal charges. This we will not do.

*Commonwealth v. Carter*, 701 S.W.2d 409, 410-11 (Ky. 1985) (emphasis and double emphasis added) (hereinafter *Carter II*).

Whether the requirement that the circuit judge be apprised that she was previously involved in the matter in controversy rises to the same formality as other forms of preservation is irrelevant. The circuit judge's awareness remains a necessary element to the successful appeal of a defendant/appellant's claim that the judge should have recused. *Matthews v. Commonwealth*, 371 S.W.3d 743, 752-53 (Ky. App. 2011) ("[P]roper procedure would be to place the burden of disqualification on the defendant . . . rather than upon the judge . . . [I]t must appear from the record . . . that [the judge] was apprised of his connection with the matter in controversy. This is in accord with every principle of justice relating to preservation of error." (quoting *Carter II*, 701 S.W.2d at 410-11)).

Johnson failed to identify in the record on appeal any evidence that he alerted Judge Whisman, or that she was otherwise aware of her prior connection with the matter in controversy. His argument for *per se* recusal fails.

2. *Failure to object or preserve argument for disqualifying the prosecutor*

A prosecutor is required to disqualify herself in any proceeding in which she "[h]as served in private practice or government service, other than as a prosecuting attorney, as a lawyer or rendered a legal opinion in the matter in controversy[.]" KRS 15.733(2)(e). This describes Hampton's prior relationship with Johnson. However, as with Judge Whisman, the record does not indicate anyone realized Hampton represented Johnson while Breathitt Circuit Court, like all Kentucky courts, was following COVID-19 protocols before prosecuting the revocation of his probation. Again, as with Johnson's argument for disqualifying Judge Whisman, the requirement of preserving error is implicated.

It is a tenet of appellate review that "a party may not raise an issue for the first time on appeal." *Taylor v. Kentucky Unemployment Ins. Comm'n*, 382 S.W.3d 826, 835 (Ky. 2012). Johnson acknowledges he is doing precisely that because he did not preserve the argument in the circuit court. Consequently, our review would be, at best, for palpable error. "A palpable error which affects the substantial rights of a party may be considered . . . by an appellate court on appeal, even though insufficiently raised or preserved for review, and appropriate relief

may be granted upon a determination that manifest injustice has resulted from the error." RCr[6] 10.26.

Importantly, however, an appellant must satisfy a prerequisite to this Court's palpable error review. He must explicitly request such review and he must expressly brief the issue of manifest injustice. Johnson did neither.

"Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant." *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). Johnson never asked for palpable error review. He claimed and argued only that "the relevant statute[] place[s] a duty on the . . . prosecutor to disqualify [herself]." (Appellant's Br., p. 6.)

As did the appellant in *Shepherd*, Johnson presented his argument "without specifically stating which individual errors amounted to palpable error under RCr 10.26 or how they rose to manifest injustice." 251 S.W.3d at 316. That is, he failed to argue to this Court that a substantial possibility exists that the result of his revocation hearing would have been more favorable to him if a different prosecutor conducted it. *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006).

---

[6] Kentucky Rules of Criminal Procedure.

The record conclusively refutes any such possibility, even if the argument had been made.

As in *Shepherd*, without asking for palpable error review or telling us how the error resulted in manifest injustice, there is nothing for this Court to do but move on to Johnson's next argument. This argument cannot be considered.

### 3. *Requirements of KRS 439.3106 were met*

Finally, Johnson argues the circuit court abused its discretion because it did not enter findings explaining why his actions made him a significant risk to the community at large. Appellate courts review a trial court's decision to revoke probation for an abuse of discretion. *Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009) (citation omitted). An abuse of discretion exists where the trial court's decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Individuals released on probation, such as Johnson, risk the revocation of their probation if the trial court determines that an individual's behavior warrants such measure. As relevant, KRS 439.3106 provides:

(1) Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large,

-13-

and cannot be appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

KRS 439.3106(1).  As the Kentucky Supreme Court noted in *Commonwealth v. Andrews*, "[h]istorically, our statutes have reflected the trial court's broad discretion in overseeing a defendant's probation, including any decision to revoke[.]"  448 S.W.3d 773, 777 (Ky. 2014).  Despite this broad discretion, "KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked."  *Id*. at 780.

Johnson argues the circuit court did not "consider" these prerequisite inquiries as *Andrews* requires because preprinted text on the court's form order states that Johnson violated his probation per KRS 439.3106(1) "in that [Johnson's] failure to comply with the conditions of supervision constitutes a significant risk to the victim(s) of the original crime and/or the community at large which cannot be appropriately managed in the community."  Record (R.) at 109.

-14-

"[P]erfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). However, this statement from *Helms* does not require remand in every instance where a trial court states that the KRS 439.3106(1)(a) criteria are met without more. This statement from *Helms* is "often misconstrued[.]" *Kendrick v. Commonwealth*, 664 S.W.3d 731, 735 (Ky. App. 2023). "[A] court is only required to make the statutory findings, not explain them." *Id.* at 734 (citing *New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019)).

What is required, however, is that "[t]here must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Helms*, 475 S.W.3d at 645. Therefore, "we may affirm a decision to revoke probation only if: a) the court made the required findings, *and* b) those findings are supported by the record." *Kendrick*, 664 S.W.3d at 735 (emphasis original).

Both requirements are met here. The circuit court's order reflects that Johnson violated his probation by committing a new offense while on probation. The circuit court checked boxes indicating it considered Johnson's criminal record, his risk of future criminal behavior, his behavior during his release, and the severity and nature of his probation violations. And the order plainly states the circuit court found Johnson's failure to comply with the conditions of his probation

-15-

constituted a significant risk to victims or to the community and that Johnson could not be appropriately managed in the community.

The record supports these findings. As Trooper Rouse testified, after Johnson failed to appear and the circuit court issued a bench warrant, Trooper Rouse observed Johnson leaving a house that historically was connected to drugs, confirmed the existence of an outstanding warrant, and pursued him. Johnson attempted to evade Trooper Rouse at extreme speed, endangering himself, the troopers who pursued him, and other motorists. Drugs and drug paraphernalia were found in his possession after Johnson finally ceased his flight. This resulted in multiple additional felony charges for Johnson. In light of these facts, we cannot say the circuit court abused its discretion in concluding that the evidence of record supports revocation of Johnson's parole pursuant to KRS 439.3106.

## CONCLUSION

For the foregoing reasons, we affirm the Breathitt Circuit Court's June 9, 2023 Order Revoking Probation.

GOODWINE, JUDGE, CONCURS.

EASTON, JUDGE, CONCURS AND FILES SEPARATE OPINION.

EASTON, JUDGE, CONCURRING: I concur without hesitation in that part of the Opinion Affirming on the sufficiency of the findings supporting the decision to revoke Johnson's shock probation. Because I do not agree that this case is easily

distinguishable from *Small v. Commonwealth*, 617 S.W.2d 61 (Ky. App. 1981), I concur with some hesitation in the result because the circuit judge and prosecutor were both mandatorily disqualified to act in this case.

The circuit judge was previously a public defender representing Johnson in this same case. The circuit judge was required to disqualify herself under KRS 26A.015(2)(b) and SCR[7] 4.300, Canon 2, Rule 2.11(5)(a). The mandatory term *shall* is used in the statute, and the rule uses the imperative *must*. Neither creates an exception for when judges have not made themselves aware of the disqualifying circumstance.

The prosecutor also was previously a public defender representing Johnson in this same case. She may not serve as the prosecutor in this case. KRS 15.733(2)(e). *See Calhoun v. Commonwealth*, 492 S.W.3d 132 (Ky. 2016) (although individual prosecutor is disqualified, others in the prosecutor's office may participate if disqualified attorney does not participate in the case).

Judges are required to avoid even the "appearance of impropriety." SCR 4.300, Canon 2. Regardless of how it happened and who did or did not realize the prior connections, the combination of both a judge and prosecutor who had represented the same defendant in the same case whose probation was then revoked in the same case is not a good appearance.

---

[7] Rules of the Kentucky Supreme Court.

It is not uncommon for attorneys in government service to take new positions, including the role of judge. When this occurs, the judge and attorneys must make themselves aware of the potential for disqualification. The cases here were relatively recent. The case file or computer record for the cases could have been quickly reviewed to determine if the former public defenders had represented Johnson.

No one suggests any intentional impropriety by either the prosecutor or the judge. Given the crushing caseloads of public defenders and the lack of personal contact with clients during the COVID-19 pandemic, it is entirely possible that the judge, the prosecutor, and even Johnson did not recognize the issue.

It is Johnson's failure to raise the issue with the circuit court and then preserve the question for our review that allows us to reject his argument. Even if we could apply palpable error review, there was certainly no manifest injustice. We cannot say that, given the troubling evidence of Johnson's spectacular probation violations, any judge would have abused his or her discretion by revoking Johnson's probation.

BRIEFS FOR APPELLANT:

Steven J. Buck
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A Beckett
Assistant Attorney General
Frankfort, Kentucky